IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

MRUGU CHAMPANERI,                      )
                                       )
            Plaintiff,                 )
                                       )
                                       )       No.
                                       )              FILED STAMP: JULY 9, 2008
THE HARTFORD LIFE AND                  )              08CV3895
ACCIDENT INSURANCE COMPANY             )              JUDGE KENNELLY
                                       )              MAG. JUDGE VALDEZ
                                       )              J. N.
                                       )
            Defendants.                )

## COMPLAINT

Now comes the Plaintiff, MRUGU CHAMPANERI, by her attorneys, MARK D. DEBOFSY and DALEY, DEBOFSKY & BRYANT, and complaining against the defendants, she states:

### *Jurisdiction and Venue*

1.      Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§ 1132(e)(1) and 1132(f).  Those provisions give the district courts jurisdiction to hear civil actions brought to recover benefits due under the terms of an employee welfare benefit plan which, in this case, consists of a group long term disability insurance plan underwritten by The Hartford Life and Accident Insurance Company ("Hartford"), for the benefit of employees of Allstate Insurance Company.  In addition, this action may be brought before this court pursuant to 28 U.S.C. § 1331, which gives the district court jurisdiction over actions that arise under the laws of the United States.

2.      The ERISA statute provides, at 29 U.S.C. § 1133, a mechanism for administrative or internal appeal of benefit denials.  Those avenues of appeal have been exhausted.

3.　　Venue is proper in the Northern District of Illinois.　29 U.S.C. § 1132(e)(2), 28 U.S.C. § 1391.

### Nature of Action

4.　　This is a claim seeking reinstatement of long-term disability insurance benefits pursuant to a policy of insurance, Policy # GLT 673454 underwritten by the Hartford Life and Accident Company to provide long term disability insurance benefits to represented employees of Allstate Insurance Company (a true and correct copy of the disability insurance policy is attached hereto and by that reference incorporated herein as Exhibit "A").　This action, seeking recovery of benefits, is brought pursuant to § 502(a)(1)(B) of ERISA (29 U.S.C. § 1132(a)(1)(B)).

### The Parties

5.　　Mrugu Champaneri ("Champaneri" or "Plaintiff") at all times relevant was a resident of Arlington Heights, Illinois, and the events, transactions, and occurrences relevant to Champaneri's claim of disability took place within the Northern District of Illinois.

6.　　The Hartford Life and Accident Insurance Company ("Hartford" or "Defendant") is an insurer of long term disability benefits. At all times relevant hereto, Hartford was doing business throughout the United States and within the Northern District of Illinois.

7.　　At all times relevant hereto, the Long Term Disability Coverage for all Employees classified by the Contract Holder as benefit eligible represented Employees of Allstate Insurance Comapny ("Plan") constituted an "employee welfare benefit plan" as defined by 29 U.S.C. § 1002(1); and incident to her employment, Champaneri received coverage under the Plan as a "participant" as defined by 29 U.S.C. § 1002(7).　This claim relates to benefits under the foregoing Plan.

*Statement of Facts*

8.     Prior to May 2004, Champareni was employed as an Administrative Assistant by Allstate Insurance Company in Northbrook, Illinois.

9.     On May 5, 2004, Champaneri ceased working due to a spinal impairment-Lumbar Radiculopathy.

10.    Champaneri applied for long term disability benefits under the terms of the Plan, which states, in relevant part:

> "**Disability or Disabled** means that during the Elimination Period and for the next 24 months you are prevented by:
> 1.   accidental bodily injury
> 2.  sickness;
> 3.  Mental Illness;
> 4.  Substance Abuse; or
> 5.  pregnancy,
>
> from performing one or more of the Essential Duties of Your Occupation, and as a result your Current Monthly Earnings are no more than 80% of your Indexed Pre-disability Earnings.
>
> After that, you must be so prevented from performing one or more of the Essential Duties of Any Occupation.
>
> Your failure to pass a physical examination required to maintain a license to perform the duties of Your Occupation does not alone mean you are Disabled."

(Exhibit A at 11).

11.     In addition, Champaneri applied for and was awarded benefits from the Social Security Administration, with an onset date of May 5, 2004. The Social Security Administration defines disability as "an inability to perform substantial gainful activity."  42 U.S.C. §423(d)(1)(A). (a true and correct copy of the Social Security award letter is attached hereto and by that reference incorporated herein as Exhibit "B").

12.     Champaneri provided Hartford with substantial medical evidence supporting her diagnosis and condition, and Hartford approved Champaneri's application for long term disability following an independent medical examination.  Even though Champaneri's disability was deemed permanent by her treating doctor and by the independent examiner, Hartford nonetheless terminated Champaneri's benefits on November 29, 2005, asserting that she did not meet the definition of disability.  Champaneri requested that Hartford reconsider its determination; and following a second independent medical examination which confirmed Champaneri's disability, benefits were reinstated.

13.     Despite the foregoing, on December 4, 2007, Hartford once again terminated Champaneri's disability benefits asserting that she no longer met the definition of disabled. Although Champaneri appealed and submitted a third independent medical evaluation which supported her ongoing disability, along with a recent MRI scan which showed Champaneri's condition was unimproved or even worsening, Hartford denied Champaneri's appeal on June 24, 2008.

14.     All avenues of administrative appeal to Hartford have now been exhausted. Therefore, this matter is ripe for judicial review.

15.     The evidence submitted to Hartford establishes Champenri's entitlement to reinstatement of her long term disability benefits, retroactive to December 4, 2007, and the court should determine and then declare that such benefits should continue under the terms and conditions of the Plan.

WHEREFORE, plaintiff prays for the following relief:

A.      That the court enter judgment in plaintiff's favor and against the defendant and that the court order the defendant to pay long term disability income benefits to plaintiff in an amount equal to the contractual amount of benefits to which she is entitled;

B.      That the court order the defendant to pay plaintiff prejudgment interest on all benefits that have accrued prior to the date of judgment;

C.      That the court order defendant to continue paying plaintiff benefits so long as she continues to meet the terms and conditions of the policy;

D.      That the court award plaintiff her attorney's fees pursuant to 29 U.S.C. § 1132(g); and

E.      That plaintiff be awarded any and all other relief to which she may be entitled, as well as the costs of suit.

Respectfully Submitted

s/ Mark D. DeBofsky
Mark D. DeBofsky
One of the Plaintiff's Attorneys

Daley, DeBofsky and Bryant
55 W Monroe St Ste 2440
Chicago, Illinois 60603
(312) 372-5200 / FAX (312) 372-2778

# GROUP
# BENEFIT
# PLAN

## ALLSTATE INSURANCE COMPANY

**Long Term Disability**

## TABLE OF CONTENTS

### Group Long Term Disability Benefits

|  | PAGE |
|---|---|
| CERTIFICATE OF INSURANCE | 2 |
| SCHEDULE OF INSURANCE | 3 |
| Must you contribute toward the cost of coverage? | 3 |
| Who is eligible for coverage? | 3 |
| When will You become eligible? (Eligibility Waiting Period) | 3 |
| ELIGIBILITY AND ENROLLMENT | 4 |
| When does your coverage start? | 5 |
| When will coverage become effective if a disabling condition causes you to be absent from work on the date it is to start? | 5 |
| Can you change benefit options? | 5 |
| When will a requested change in benefit options take effect? | 5 |
| BENEFITS | 6 |
| When do benefits become payable? | 6 |
| When will benefit payments terminate? | 7 |
| What happens if you return to work but become Disabled again? | 7 |
| CALCULATION OF MONTHLY BENEFIT | 8 |
| What is Rehabilitation? | 9 |
| Workplace Modification Benefit | 9 |
| PRE-EXISTING CONDITIONS LIMITATIONS | 10 |
| Are there any other limitations on coverage? | 10 |
| EXCLUSIONS | 11 |
| What Disabilities are not covered? | 11 |
| TERMINATION | 11 |
| When does your coverage terminate? | 11 |
| Does your coverage continue if your employment terminates because you are Disabled? | 12 |
| GENERAL PROVISIONS | 12 |
| DEFINITIONS | 14 |
| ERISA | 20 |

PS-M-90

**HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY**
Hartford, Connecticut
(Herein called Hartford Life)

---

**CERTIFICATE OF INSURANCE**
Under
**The Group Insurance Policy**
**as of the Effective Date**
Issued by
**HARTFORD LIFE**
to
**The Policyholder**

---

This is to certify that Hartford Life has issued and delivered the Group Insurance Policy to The Policyholder.

The Group Insurance Policy insures the employees of the Policyholder who:
- are eligible for the insurance;
- become insured; and
- continue to be insured;

according to the terms of the Policy.

The terms of the Group Insurance Policy which affect an employee's insurance are contained in the following pages. This Certificate of Insurance and the following pages will become your Booklet-certificate. The Booklet-certificate is a part of the Group Insurance Policy.

This Booklet-certificate replaces any other which Hartford Life may have issued to the Policyholder to give to you under the Group Insurance Policy specified herein.

Christine Hayer Repasy, *Secretary*                 Thomas M. Marra, *President*

---

## SCHEDULE OF INSURANCE

Final interpretation of all provisions and coverages will be governed by the Group Insurance Policy on file with Hartford Life at its home office.

Policyholder:                                ALLSTATE INSURANCE COMPANY

Group Insurance Policy:                      GLT-673454

Plan Effective Date:                         January 1, 2000

### THE BENEFITS DESCRIBED HEREIN ARE THOSE IN EFFECT AS OF JANUARY 1, 2003.

This plan of Disability Insurance provides you with loss of income protection if you become disabled from a covered accidental bodily injury, sickness or pregnancy.

**Must you contribute toward the cost of coverage?**
You must pay the full cost of coverage.

**Who is eligible for coverage?**
Eligible Class(es):                          All Regular Full-time and Regular Part-time Employees

**Maximum Monthly Benefit:**                 $ 7,500

**Minimum Monthly Benefit:**                 $35

**Benefit Percentage:**                      50%
**Secondary Benefit Percentage:**            70%

**Annual Enrollment Period:**    Varies by Plan year

**When will You become eligible? (Eligibility Waiting Period)**
You are eligible on the later of either the Plan Effective Date or the date You enter an eligible class.

The Elimination Period is the period of time you must be Disabled before benefits become payable. It is the last to be satisfied of the following:

OPTION 1
1.  when you reach a total of 140 days within the first 180 consecutive day(s) of any one period of Disability; or
2.  with the exception of benefits required by state law, the expiration of any Employer sponsored short term disability benefits or salary continuation program.

OPTION 2
1.  when you reach a total of 90 days within the first 120 consecutive day(s) of any one period of Disability; or
2.  with the exception of benefits required by state law, the expiration of any Employer sponsored short term disability benefits or salary continuation program.

## MAXIMUM DURATION OF BENEFITS TABLE

| Age When Disabled | Benefits Payable |
|---|---|
| Prior to Age 62 | To Age 65 |
| Age 62 | To Age 65, or for 31 months, if greater |
| Age 63 | 31 months |
| Age 64 | 31 months |
| Age 65 | 31 months |
| Age 66 | 31 months |
| Age 67 | 31 months, but not beyond the end of the calendar month in which you attain age 70 |
| Age 68 | To age 70 |
| Age 69 and over | 12 months |

The above table shows the maximum duration for which benefits may be paid. All other limitations of the plan will apply.

## ELIGIBILITY AND ENROLLMENT

**Who are Eligible Persons?**
All persons in the class or classes shown in the Schedule of Insurance will be considered Eligible Persons.

**When will you become eligible?**
You will become eligible for coverage on either:
1. the Plan Effective Date, if you have completed the Eligibility Waiting Period; or if not
2. the date on which you complete the Eligibility Waiting Period.

**How do you enroll?**
To enroll you must enroll in accordance with the Employer's benefits enrollment process.

If you do not enroll within 31 days after becoming eligible, the following limitations will apply to a later enrollment:
1. you must submit Evidence of Insurability satisfactory to us; and
2. you may not enroll until:
    a) an Annual Enrollment Period; or
    b) you have a Qualified Status Change.

The dates of the Annual Enrollment Period are shown in the Schedule of Insurance.

**What constitutes a Qualified Status Change?**
A Qualified Status Change means:
1. your marriage, or the birth or adoption of a child, or becoming the legal guardian of a child;
2. divorce, legal separation or annulment from your spouse;
3. your spouse's employment changes and it results in a gain or loss of other group coverage;
4. conversion from Part-time to Regular Full-time or Regular Part-time employment;
5. the death of a spouse; or
6. an Employer approved Leave of Absence.

**What is Evidence of Insurability?**
If you are required to submit Evidence of Insurability, you must:
1.  complete and sign a health and medical history form provided by us;
2.  submit to a medical examination, if requested;
3.  provide any additional information and attending physicians' statements that we may require; and
4.  furnish all such evidence at your own expense.

We will then determine if you are insurable under the plan.

## WHEN COVERAGE STARTS

**When does your coverage start?**
If you pay the full cost, your coverage will start on the date determined below:
1.  the date you become eligible, if you enroll or have enrolled by then; or if you enroll within 31 days of the date you are eligible;
2.  the date we approve your Evidence of Insurability, if you are required to submit Evidence of Insurability; or
3.  the later of:
    a)  the first day of the Plan year following the Annual Enrollment Period if you enroll during an Annual Enrollment Period; or
    b)  the date we approve Evidence of Insurability, if you are required to submit Evidence of Insurability.

## DEFERRED EFFECTIVE DATE

**When will coverage become effective if a disabling condition causes you to be absent from work on the date it is to start?**
If you are absent from work due to:
1.  accidental bodily injury;
2.  sickness;
3.  pregnancy;
4.  Mental Illness; or
5.  Substance Abuse,

on the date your insurance or increase in coverage would otherwise have become effective, your effective date will be deferred. Your insurance, or increase in coverage will not become effective until you are Actively at Work for one full day.

## CHANGES IN COVERAGE

**Can you change benefit options?**
You may change to an option providing increased or decreased benefits during:
1.  an Annual Enrollment Period; or
2.  a Qualified Status Change.

**When will a requested change in benefit options take effect?**
If you enroll for a change in benefit option during an Annual Enrollment Period, the change will take effect on the later of:
1.  the first day of the month following the Annual Enrollment Period; or
2.  the date we approve your Evidence of Insurability if you are required to submit Evidence of Insurability.

If you enroll for a change in benefit option within 31 days following a Qualified Status Change, the change will take effect on the later of:
1.  the date you enroll for the change; or
2.  the date we approve your Evidence of Insurability if you are required to submit Evidence of Insurability.

Any such increase in coverage is subject to the following limitations:
1.  the Deferred Effective Date Provision; and
2.  Pre-existing Conditions Limitations.

**Do coverage amounts change if there is a change in your class or your rate of pay?**
Your coverage may increase or decrease on the date there is a change in your class or Monthly Rate of Basic Earnings. However, no increase in coverage will be effective unless on that date you:
1.  are a Regular Active Full-time or Regular Part-time Employee; and
2.  are not absent from work due to being Disabled.

If you were so absent from work, the effective date of such increase will be deferred until you are Actively at Work for one full day.

No change in your Rate of Basic Earnings will become effective until the date we receive notice of the change.

**What happens if the Employer changes the plan?**
Any increase or decrease in coverage because of a change in the Schedule of Insurance will become effective on the date of the change, subject to the following limitations on an increase:
1.  the Deferred Effective Date provision; and
2.  Pre-existing Conditions Limitations.

**BENEFITS**

**When do benefits become payable?**
You will be paid a monthly benefit if:
1.  you become Disabled while insured under this plan;
2.  you are Disabled throughout the Elimination Period;
3.  you remain Disabled beyond the Elimination Period;
4.  you are, and have been during the Elimination Period, under the Regular Care of a Physician; and
5.  you submit Proof of Loss satisfactory to us.

Benefits accrue as of the first day after the Elimination Period and are paid monthly.

**When will benefit payments terminate?**
We will terminate benefit payment on the first to occur of:
1. the date you are no longer Disabled as defined;
2. the date you fail to furnish Proof of Loss, when requested by us;
3. the date you are no longer under the Regular Care of a Physician, or refuse our request that you submit to an examination by a Physician;
4. the date you die;
5. the date your Current Monthly Earnings exceed:
   a) 80% of your Indexed Pre-disability Earnings if you are receiving benefits for being Disabled from Your Occupation;
   b) an amount that is equal to the product of your Indexed Pre-disability Earnings and the Benefit Percentage if you are receiving benefits for being Disabled from Any Occupation;
6. the date determined from the Maximum Duration of Benefits Table shown in the Schedule of Insurance;
7. the date no further benefits are payable under any provision in this plan that limits benefit duration; or
8. the date you refuse to participate in a Rehabilitation program or, refuse to cooperate with or try:
   a) modifications made to the work site or job process to accommodate your identified medical limitations to enable you to perform the Essential Duties of Your Occupation;
   b) adaptive equipment or devices designed to accommodate your identified medical limitations to enable you to perform the Essential Duties of Your Occupation;
   c) modifications made to the work site or job process to accommodate your identified medical limitations to enable you to perform the Essential Duties of Any Occupation, if you were receiving benefits for being disabled from Any Occupation; or
   d) adaptive equipment or devices designed to accommodate your identified medical limitations to enable you to perform the Essential Duties of Any Occupation, if you were receiving benefits for being disabled from Any Occupation,

   provided a qualified Physician agrees that such modifications, Rehabilitation program or adaptive equipment accommodate your medical limitation; or
9. the date you refuse to receive recommended treatment that is generally acknowledged by physicians to cure, correct or limit the disabling condition.

## MENTAL ILLNESS BENEFITS

**Are benefits limited for Mental Illness?**
If you are Disabled because of:
1. Mental Illness that results from any cause; or
2. any condition that may result from Mental Illness,

then, subject to all other Policy provisions, benefits will be payable:
1. only for so long as you are confined in a hospital or other place licensed to provide medical care for the disabling condition; or
2. when you are not so confined, a total of 24 months for all such Disabilities during your lifetime.

## RECURRENT DISABILITY

**What happens if you return to work but become Disabled again?**
After the Elimination Period, when a return to work as a Regular Full-time or Regular Part-time Employee is followed by a recurrent Disability, and such Disability is:
1. due to the same cause; or
2. due to a related cause; and
3. within 6 month(s) of the return to work,

the Period of Disability prior to your return to work and the recurrent Disability will be considered one Period of Disability, provided the Group Insurance Policy remains in force.

If you return to work as a Regular Full-time or Regular Part-time Employee for 6 month(s) or more, any recurrence of a Disability will be treated as a new Disability. A new Disability is subject to a new Elimination Period and a new Maximum Duration of Benefits. The Elimination Period and Maximum Duration of Benefits Table are in the Schedule of Insurance.

The term "Period of Disability" as used in this provision means a continuous length of time during which you are Disabled under this plan.

## CALCULATION OF MONTHLY BENEFIT

**How are Disability benefits calculated?**

**Return to Work Incentive**
If you remain Disabled after the Elimination Period, but work while you are Disabled, we will determine your Monthly Benefit for a period of up to 12 consecutive months as follows:
1. multiply your Pre-disability Earnings by the Benefit Percentage;
2. multiply your Pre-disability Earnings by the Secondary Benefit Percentage, and from this product subtract all Other Income Benefits; and
3. compare the results with the Maximum Benefit.

The calculation giving the least amount is your Monthly Benefit. Current Monthly Earnings will not be used to reduce your Monthly Benefit during this period. However, if the sum of your Monthly Benefit and your Current Monthly Earnings exceeds 100% of your Pre-disability Earnings, we will reduce your Monthly Benefit by the amount of excess.

If you are Disabled, but you are not receiving benefits under the Return to Work Incentive, we will calculate your Monthly Benefit as follows:
1. multiply your Monthly Income Loss by the Benefit Percentage;
2. multiply your Monthly Income Loss by the Secondary Benefit Percentage, and from this product subtract all Other Income Benefits; and
3. compare the results with the Maximum Benefit.

The calculation giving the least amount is your Monthly Benefit.

**What happens if the sum of the Monthly Benefit, Current Monthly Earnings and Other Income Benefits exceeds 100% of Pre-disability Earnings?**
We will reduce your Monthly Benefit by the amount of the excess.

**Minimum Monthly Benefit**
Your Monthly Benefit will not be less than the Minimum Monthly Benefit shown in the Schedule of Insurance.

**How is the benefit calculated for a period of less than a month?**
If a Monthly Benefit is payable for less than a month, we will pay 1/30 of the Monthly Benefit for each day you were Disabled.

Benefit Percentages and Maximum Benefits are shown in the Schedule of Insurance.

# REHABILITATION

**What is Rehabilitation?**
Rehabilitation is a process of working together to plan, adapt, and put into use options and services to meet your return to work needs.

A Rehabilitation program may include, when we consider it to be appropriate, any necessary and feasible:
1. vocational testing;
2. vocational training;
3. alternative treatment plans such as:
    a) support groups;
    b) physical therapy;
    c) occupational therapy; and
    d) speech therapy;
4. work-place modification to the extent not otherwise provided; and
5. job placement,

and similar services.

## WORKPLACE MODIFICATION BENEFIT

**Will our Rehabilitation program provide for modifications to the workplace to accommodate a Disabled employee's return to work?**
We will reimburse your Employer for the expense of reasonable modifications to your workplace to accommodate your Disability and enable you to return to work as a Regular Full-time or Regular Part-time Employee. To qualify for this benefit:
1. your Disability must be covered by this plan;
2. the Employer must agree to make modifications to the workplace in order to reasonably accommodate your return to work and the performance of the essential duties of your job; and
3. any proposed modifications must be approved in writing by us.

Benefits paid for such workplace modification shall not exceed the amount equal to your Pre-disability Earnings multiplied by the Benefit Percentage.

We have the right, at our expense, to have you examined or evaluated by:
1. a physician or other health care professional; or
2. a vocational expert or rehabilitation specialist,

of our choice so that we may evaluate the appropriateness of any proposed modification.

The Employer's costs for approved modifications will be reimbursed after:
1. the proposed modifications made on your behalf are complete;
2. we have been provided written proof of the expenses incurred to provide such modification; and
3. you have returned to work as a Regular Full-time or Regular Part-time Employee.

This Workplace Modification benefit will not be payable if:
1. the Employer does not incur any cost in making the modification;
2. we have not given written approval of the modification prior to expenses being incurred; or
3. you become self-employed, or return to work for another employer.

**Workplace Modification** means change in your work environment, or in the way a job is performed, to allow you to perform, while Disabled, the Essential Duties of your job. Payment of this benefit will not reduce or deny any benefit you are eligible to receive under the terms of this plan.

## PRE-EXISTING CONDITIONS LIMITATIONS

**Are there any other limitations on coverage?**
No benefit will be payable under the plan for any Disability that is due to, contributed to by, or results from a Pre-existing Condition, unless such Disability begins:
1. after the last day of 12 consecutive month(s) while insured during which you receive no medical care for the Pre-existing Condition; or
2. after the last day of 12 consecutive month(s) during which you have been continuously insured under this plan.

**Pre-existing Condition means:**
1. any accidental bodily injury, sickness, Mental Illness, pregnancy, or episode of Substance Abuse; or
2. any manifestations, symptoms, findings, or aggravations related to or resulting from such accidental bodily injury, sickness, Mental Illness, pregnancy, or Substance Abuse;

for which you received Medical Care during the 12 month period that ends the day before:
1. your effective date of coverage; or
2. the effective date of a Change in Coverage.

**Medical Care is received when:**
1. a Physician is consulted or medical advice is given; or
2. treatment is recommended, prescribed by, or received from a Physician.

Treatment includes but is not limited to:
1. medical examinations, tests, attendance or observation; and
2. use of drugs, medicines, medical services, supplies or equipment.

## CONTINUITY FROM A PRIOR PLAN

**Is there continuity of coverage from a Prior Plan?**
If you were:
1. insured under the Prior Plan;
2. Actively at Work; and
3. not eligible to receive benefits under the Prior Plan,

on the day before the Plan Effective Date, the Deferred Effective Date provision will not apply to you.

If you become insured under the Group Insurance Policy on the Plan Effective Date and were covered under the Prior Plan on the day before the Plan Effective Date, the Pre-existing Conditions Limitation will cease to apply on the first to occur of the following dates:
1. the Plan Effective Date, if your coverage for the Disability was not limited by a pre-existing condition restriction under the Prior Plan; or
2. if your coverage was limited by a pre-existing condition restriction under the Prior Plan, the date the restriction would have ceased to apply had the Prior Plan remained in force.

The amount of the Monthly Benefit payable for a Pre-existing Condition in accordance with the previous paragraph will be the lesser of:
1. the Monthly Benefit which was paid by the Prior Plan; or
2. the Monthly Benefit provided by this plan.

No payment shall be made after the earlier to occur of:
1. the date payments would have ceased under the Prior Plan; or
2. the date payments cease under this plan.

If you received Monthly Benefits for Disability under the Prior Plan, and:
1.  you returned to work as a Regular Full-time or Regular Part-time Employee before the Effective Date of this plan;
2.  within 6 months of the return to work, you have a recurrence of the same Disability under this plan; and
3.  there are no benefits available for the recurrence under the Prior Plan,

the Elimination Period of this plan, which would otherwise apply to the recurrence, will be waived if the recurrence would have been covered without any further Elimination Period under the Prior Plan had it remained in force.

## EXCLUSIONS

**What Disabilities are not covered?**
The plan does not cover, and no benefit shall be paid for any Disability:
1.  unless you are under the Regular Care of a Physician;
2.  that is caused by war or act of war (declared or not);
3.  caused by your commission of or attempt to commit a felony, or to which a contributing cause was your being engaged in an illegal occupation; or
4.  caused by an intentionally self-inflicted injury.

If you are receiving or are eligible for benefits for a Disability under a prior disability plan that:
1.  was sponsored by the Employer; and
2.  was terminated before the Effective Date of this plan,

no benefits will be payable for the Disability under this plan.

## TERMINATION

**When does your coverage terminate?**
You will cease to be covered on the earliest to occur of the following dates:
1.  the date the Group Insurance Policy terminates;
2.  the date the Group Insurance Policy no longer insures your class;
3.  the date premium payment is due but not paid by the Employer;
4.  the last day of the period for which you make any required premium contribution, if you fail to make any further required contribution;
5.  the date you cease to be an Active Full-time Employee in an eligible class including:
    a)  temporary layoff;
    b)  leave of absence; or
    c)  a general work stoppage (including a strike or lockout); or
6.  the date your Employer ceases to be a Participant Employer, if applicable.

**Does coverage continue during a leave of absence?**
Your coverage is suspended if you go on a family, military or personal leave of absence. Under an illness leave of absence, you can elect to drop coverage. Otherwise, your coverage automatically continues.

**Can coverage be reinstated?**
If You return from a family, military or personal Leave of Absence of 12 weeks or less within the same calendar year, You may elect to have your coverage reinstated without providing Evidence of Insurability.

If You return from a family, military or personal Leave of Absence of more than 12 weeks within the same calendar year, You may enroll for coverage and will be required to provide Evidence of Insurability.

If You return from a family, military or personal Leave of Absence in a different calendar year, you may elect to reinstate coverage. You may enroll, change or drop coverage. Evidence of Insurability rules will apply.

**Does your coverage continue if your employment terminates because you are Disabled?**
If you are Disabled and you cease to be an Active Full-time Employee, your insurance will be continued:
1.  during the Elimination Period while you remain Disabled by the same Disability; and
2.  after the Elimination Period for as long as you are entitled to benefits under the Policy.

**Must premiums be paid during a Disability?**
No premium will be due for you:
1.  after the Elimination Period; and
2.  for as long as benefits are payable.

**Do benefits continue if the plan terminates?**
If you are entitled to benefits while Disabled and the Group Insurance Policy terminates, benefits:
1.  will continue as long as you remain Disabled by the same Disability; but
2.  will not be provided beyond the date we would have ceased to pay benefits had the insurance remained in force.

Termination for any reason of the Group Insurance Policy will have no effect on our liability under this provision.

## GENERAL PROVISIONS

**What happens if facts are misstated?**
If material facts about you were not stated accurately:
1.  your premium may be adjusted; and
2.  the true facts will be used to determine if, and for what amount, coverage should have been in force.

No statement made by you relating to your insurability will be used to contest the insurance for which the statement was made after the insurance has been in force for two years during your lifetime. In order to be used, the statement must be in writing and signed by you.

**When should we be notified of a claim?**
You must give us written notice of a claim within 30 days after Disability starts. If notice cannot be given within that time, it must be given as soon as possible. Such notice must include your name, your address and the Group Insurance Policy number.

**Are special forms required to file a claim?**
When we receive a notice of claim, you will be sent forms for providing us with Proof of Loss. We will send these forms within 15 days after receiving a notice of claim. If we do not send the forms within 15 days, you may submit any other written proof which fully describes the nature and extent of your claim.

**What is Proof of Loss?**
Proof of Loss may include but is not limited to the following:
1.  documentation of:
    a)  the date your Disability began;
    b)  the cause of your Disability;
    c)  the prognosis of your Disability;
    d)  your Earnings or income, including but not limited to copies of your filed and signed federal and state tax returns; and
    e)  evidence that you are under the Regular Care of a Physician;
2.  any and all medical information, including x-ray films and photocopies of medical records, including histories, physical, mental or diagnostic examinations and treatment notes;
3.  the names and addresses of all:
    a)  Physicians and practitioners of healing arts you have seen or consulted;
    b)  hospitals or other medical facilities in which you have been seen or treated; and
    c)  pharmacies which have filled your prescriptions within the past three years;
4.  your signed authorization for us to obtain and release:
    a)  medical, employment and financial information; and
    b)  any other information we may reasonably require;

5.  your signed statement identifying all Other Income Benefits; and
6.  proof that you and your dependents have applied for all Other Income Benefits which are available. You will not
    be required to claim any retirement benefits which you may only get on a reduced basis.

All proof submitted must be satisfactory to us.

**When must Proof of Loss be given?**
Written Proof of Loss must be sent to us within 90 days after the start of the period for which we owe payment. If
proof is not given by the time it is due, it will not affect the claim if:
1.  it was not possible to give proof within the required time; and
2.  proof is given as soon as possible; but
3.  not later than 1 year after it is due, unless you are not legally competent.

We may request Proof of Loss throughout your Disability. In such cases, we must receive the proof within 30 days of
the request.

**When must one apply for Social Security Benefits?**
You will be required to apply for Social Security disability benefits when the duration of your Disability meets the
minimum duration required to apply for such benefits. If the Social Security Administration denies your eligibility for
benefits, you will be required:
1.  to follow the process established by the Social Security Administration to reconsider the denial; and
2.  if denied again, to request a hearing before an Administrative Law Judge of the Office of Hearing and Appeals.

**What additional Proof of Loss are we entitled to?**
We may have you examined to determine if you are Disabled. Any such examination will be:
1.  at our expense; and
2.  as reasonably required by us.

**Who gets the benefit payments?**
All payments are payable to you. Any payments owed at your death may be paid to your estate. If any payment is
owed to your estate, a person who is a minor or a person who is not legally competent, then we may pay up to $1,000
to any of your relatives who is entitled to it in our opinion. Any such payment shall fulfill our responsibility for the
amount paid.

**When are payment checks issued?**
When we determine that you are Disabled and eligible to receive benefits, we will pay accrued benefits at the end of
each month that you are Disabled. We may, at our option, make an advance benefit payment based on our estimated
duration of your Disability. If any payment is due after a claim is terminated, it will be paid as soon as satisfactory
Proof of Loss is received.

**What notification will you receive if your claim is denied?**
If a claim for benefits is wholly or partly denied, you will be furnished with written notification of the decision. This
written decision will:
1.  give the specific reason(s) for the denial;
2.  make specific reference to the Policy provisions on which the denial is based;
3.  provide a description of any additional information necessary to prepare a claim and an explanation of why it is
    necessary; and
4.  provide an explanation of the review procedure.

**What recourse do You have if Your claim is denied?**
On any claim, the claimant or His representative must appeal to Us for a full and fair review.
1.  You must request a review upon written application within:
    a)  180 days of receipt of claim denial if the claim requires a determination of disability, or
    b)  60 days of receipt of claim denial for all other claims; and
2.  you may request copies of all documents, records, and other information relevant to your claim; and
3.  you may submit written comments, documents, records, and other information relating to your claim.

We will respond to you in writing with our final decision on your claim.

**When can legal action be started?**
Legal action cannot be taken against us:
1.  sooner than 60 days after due Proof of Loss has been furnished; or
2.  three years after the time written Proof of Loss is required to be furnished according to the terms of the Policy (five years in Kansas; six years in South Carolina).

**What happens if benefits are overpaid?**
An overpayment occurs when it is determined that the total amount we have paid in benefits is more than the amount that was due to you under the plan. This includes, but is not limited to, overpayments resulting from:
1.  retroactive awards of Other Income Benefits;
2.  failure to report, or late notification to us of Other Income Benefits or earned income;
3.  misstatement; or
4.  an error we may make.

We have the right to recover from you any amount that is an overpayment of benefits under this plan.  You must refund to us the overpaid amount.  We may also, without forfeiting our right to collect an overpayment through any means legally available to us, recover all or any portion of an overpayment by reducing or withholding future benefit payments, including the Minimum Monthly Benefit.

**What are our subrogation rights?**
If an Insured Person:
1.  suffers a Disability because of the act or omission of a third party;
2.  becomes entitled to and is paid benefits under the Group Insurance Policy in compensation for lost wages; and
3.  does not initiate legal action for the recovery of such benefits from the third party in a reasonable period of time,

then we will be subrogated to any rights the Insured Person may have against the third party and may, at our option, bring legal action to recover any payments made by us in connection with the Disability.

**How do we deal with fraud?**
Insurance Fraud occurs when you and/or your Employer, with the intent to injure, defraud or deceive us, provides us with false information or files a claim for benefits that contains any false, incomplete or misleading information.  It is a crime if you and/or your Employer commit Insurance Fraud. We will use all means available to us to detect, investigate, deter and prosecute those who commit Insurance Fraud. We will pursue all available legal remedies if you and/or your Employer perpetrates Insurance Fraud.

**Who interprets policy terms and conditions?**
We have full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy.

**DEFINITIONS**

The terms listed will have these meanings.

**Actively at Work**
You will be considered to be actively at work with your Employer on a day which is one of your Employer's scheduled work days if you are performing, in the usual way, all of the regular duties of your job on a Full-time basis on that day. You will be deemed to be actively at work on a day which is not one of your Employer's scheduled work days only if you were actively at work on the preceding scheduled work day.

**Regular Full-time or Regular Part-time Employee** means an employee who works for the Employer on a regular basis in the usual course of the Employer's business.

The Regular Full-time Employee must work the number of hours in the Employer's normal work week in the unit to which he is assigned.

The Regular Part-time Employee:
1.  is regularly scheduled to work less than the hours that comprise a full work week in the unit to which he is assigned;
2.  has at least one year of continuous service; and
3.  has accumulated at least 1,000 hours of service in an anniversary year.

**Any Occupation** means an occupation for which you are qualified by education, training or experience, and that has an earnings potential greater than an amount equal to the lesser of the product of your Indexed Pre-disability Earnings and the Benefit Percentage and the Maximum Monthly Benefit shown in the Schedule of Insurance.

**Current Monthly Earnings** means the monthly earnings you receive from:
1.  the Employer while Disabled;
2.  other employment.

Current Monthly Earnings will also include the amount of pay for another or modified job position, which may be offered to you by the Employer, if you refuse the offer. The requirements of such position must be within your capabilities as described by your Physician, and consistent with your education, training and experience.

**Disability or Disabled** means that during the Elimination Period and for the next 24 months you are prevented by:
1.  accidental bodily injury;
2.  sickness;
3.  Mental Illness;
4.  Substance Abuse; or
5.  pregnancy,

from performing one or more of the Essential Duties of Your Occupation, and as a result your Current Monthly Earnings are no more than 80% of your Indexed Pre-disability Earnings.

After that, you must be so prevented from performing one or more of the Essential Duties of Any Occupation.

Your failure to pass a physical examination required to maintain a license to perform the duties of Your Occupation does not alone mean that you are Disabled.

**Employer** means the Policyholder.

**Essential Duty** means a duty that:
1.  is substantial, not incidental;
2.  is fundamental or inherent to the occupation; and
3.  can not be reasonably omitted or changed.

To be at work for the number of hours in your regularly scheduled workweek is also an Essential Duty.

**Indexed Pre-disability Earnings** when used in this policy means your Pre-disability Earnings adjusted annually by adding the lesser of:
1.  10%; or
2.  the percentage change in the Consumer Price Index (CPI-W).

The adjustment is made January 1st each year after you have been Disabled for 12 consecutive months, and if you are receiving benefits at the time the adjustment is made.

The term Consumer Price Index (CPI-W) means the index for Urban Wage Earners and Clerical Workers published by the United States Department of Labor. It measures on a periodic (usually monthly) basis the change in the cost of typical urban wage earners' and clerical workers' purchase of certain goods and services. If the index is discontinued or changed, we may use another nationally published index that is comparable to the CPI-W.

For the purposes of this benefit, the percentage change in the CPI-W means the difference between the current year's CPI-W as of July 31st, and the prior year's CPI-W as of July 31st, divided by the prior year's CPI-W.

**Mental Illness** means any psychological, behavioral or emotional disorder or ailment of the mind, including physical manifestations of psychological, behavioral or emotional disorders, but excluding demonstrable, structural brain damage.

**Monthly Benefit** means a monthly sum payable to you while you are Disabled, subject to the terms of the Group Insurance Policy.

**Monthly Income Loss** is the difference of your Pre-disability Earnings less your Current Monthly Earnings.

**Monthly Rate of Basic Earnings** means the monthly average of Qualified Annual Earnings or QAE as determined by your Employer's Human Resource policies and practices.

QAE includes:
- salary;
- wages; bonuses; pay for Paid Time Off (PTO) Bank days taken;
- holiday pay;
- overtime pay;
- compensation deferred under a deferred compensation plan of Allstate Insurance Company;
- Employer payments for short term disability;
- Employer payments for temporary military service;
- pre-tax Employee deposits under the Savings and Profit Sharing Fund of Allstate Employees or any other qualified profit sharing or stock bonus plan maintained by the Employer;
- pre-tax contributions to the FSA Program; and
- payments in the nature of salary continuation.

QAE does not include:
- lump sum and periodic payments paid upon termination or retirement, including payments in accordance with any severance policy or plan maintained by the Employer;
- service allowance;
- stay and sign-on bonuses;
- lump sum payments for PTO Bank days bought but not taken payments for PTO days sold;
- retainers, payments or reimbursements in connection with moving or living expenses;
- foreign allowances;
- medical expense reimbursements;
- prizes or awards, including awards for special merit or achievement;
- taxable fringe benefits including tax gross-up payments or fringe benefits;
- dividends paid with respect to shares of restricted stock;
- value of stock options or stock appreciation rights and tax benefit rights relating to stock options;
- cash payments received pursuant to stock options;
- payments under any long-term executive compensation plans;
- performance units;
- restricted stock awards;
- payments (including bonuses) for Plan Business, i.e. business which is placed through or reinsured with a plan, association, or organization established pursuant to a statute or regulation or a cooperative plan of the insurance industry (including assigned risk business, California Earthquake Authority, facility business, flood business and Hawaii Hurricane Relief Fund);
- involuntary insurance business, including business written under a Joint Underwriting Association or FAR Plan, and business which is written by the Company and its subsidiaries pursuant to an order mandating depopulation of Plan Business;
- general Underwriters Agency, Inc., business;
- any business owned by an agent;
- retirement or profit sharing benefits;

- distributions from any deferred compensation plan;
- amounts paid after death, disability (except for the Employer short term disability), termination or retirement;
- debt forgiveness by the Employer;
- Employer-paid contributions and benefit credits for any welfare benefit plans or any profit participation or stock plans;
- LTD benefit payments;
- Workers' compensation payments; and
- any other similar types of compensation which may be specifically excluded by the Employer.

QAE is reclassified each year on September 1st, based on eligible earnings in the preceding 12 months ending August 31st, and benefit coverage amounts and deductions are updated the following January 1st.

If You have been on a leave of absence at any time during the 12 months leading up to September 1st, your QAE will not be reclassified. Your current QAE will carry forward. Your QAE will not be reclassified until the next September 1st when you have a consecutive 12 months of pay history at August 31st.

If You are newly hired, Your annual base pay will be used to calculate QAE. Your QAE will not be reclassified until the next September 1st when you have consecutive 12 months of pay history as an eligible Employee at August 1st.

If You are newly eligible for coverage, Your annual base pay on the date You become eligible (for example, the date a part-time employee becomes a Regular Part-time Employee) is used to determine QAE. Your QAE will not be reclassified until you have a consecutive 12 months of pay history at August 31st.

**Other Income Benefits** mean the amount of any benefit for loss of income, provided to you or to your family, as a result of the period of Disability for which you are claiming benefits under this plan. This includes any such benefits for which you or your family are eligible or that are paid to you, to your family or to a third party on your behalf, pursuant to any:

1. temporary disability benefits under a Workers' Compensation Law, the Jones Act, occupational disease law, similar law or substitutes or exchanges for such benefits;
2. governmental law or program that provides disability or unemployment benefits as a result of your job with the Employer;
3. plan or arrangement of coverage, whether insured or not, or as a result of employment by or association with the Employer or as a result of membership in or association with any group, association, union or other organization;
4. individual insurance policy where the premium is wholly or partially paid by the Employer;
5. mandatory "no-fault" automobile insurance plan;
6. disability benefits under:
   a) the United States Social Security Act or alternative plan offered by a state or municipal government;
   b) the Railroad Retirement Act;
   c) the Canada Pension Plan, the Canada Old Age Security Act, the Quebec Pension Plan or any provincial pension or disability plan; or
   d) similar plan or act,
   that you, your spouse and children are eligible to receive because of your Disability; or
7. disability benefit from the Veteran's Administration, or any other foreign or domestic governmental agency:
   a) that begins after you become Disabled; or
   b) if you were receiving the benefit before becoming Disabled, the amount of any increase in the benefit that is attributed to your Disability.

Other Income Benefits also mean any payments that are made to you, your family, or to a third party on your behalf, pursuant to any:
1. disability benefit under the Employer's Retirement Plan;
2. permanent disability or impairment benefits under a Workers' Compensation Law, the Jones Act, occupational disease law, similar law or substitutes or exchanges of such benefits;
3. portion of a settlement or judgment, minus associated costs, of a lawsuit that represents or compensates for your loss of earnings;
4. retirement benefit from a Retirement Plan that is wholly or partially funded by employer contributions, unless:
   a) you were receiving it prior to becoming Disabled; or
   b) you immediately transfer the payment to another plan qualified by the United States Internal Revenue Service for the funding of a future retirement.
   Other Income Benefits will not include the portion, if any, of such retirement benefit that was funded by your after-tax contributions; or
5. retirement benefits under:
   a) the United States Social Security Act or alternative plan offered by a state or municipal government;
   b) the Railroad Retirement Act;
   c) the Canada Pension Plan, the Canada Old Age Security Act; the Quebec Pension Plan or any provincial pension or disability plan; or
   d) similar plan or act,
   that you, your spouse and children receive because of your retirement, unless you were receiving them prior to becoming Disabled.

If you are paid Other Income Benefits in a lump sum or settlement, you must provide proof satisfactory to us of:
1. the amount attributed to loss of income; and
2. the period of time covered by the lump sum or settlement.

We will pro-rate the lump sum or settlement over this period of time. If you cannot or do not provide this information, we will assume the entire sum to be for loss of income, and the time period to be 24 months. We may make a retroactive allocation of any retroactive Other Income Benefit. A retroactive allocation may result in an overpayment of your claim. Please see the provision entitled, "What happens if benefits are overpaid?"

The amount of any increase in Other Income Benefits will not be included as Other Income Benefits if such increase:
1. takes effect after the date benefits become payable under this plan; and
2. is a general increase which applies to all persons who are entitled to such benefits.

**Physician** means a person who is:
1. a doctor of medicine, osteopathy, psychology or other healing art recognized by us;
2. licensed to practice in the state or jurisdiction where care is being given; and
3. practicing within the scope of that license.

**Pre-disability Earnings** means your Monthly Rate of Basic Earnings in effect on the day before you became Disabled.

**Prior Plan** means the long term disability insurance carried by the Employer on the day before the Plan Effective Date.

**Regular Care of a Physician** means you are attended by a Physician, who is not related to you:
1. with medical training and clinical experience suitable to treat your disabling condition; and
2. whose treatment is:
   a) consistent with the diagnosis of the disabling condition;
   b) according to guidelines established by medical, research and rehabilitative organizations; and
   c) administered as often as needed,

   to achieve the maximum medical improvement.

**Retirement Plan** means a defined benefit or defined contribution plan that provides benefits for your retirement and which is not funded wholly by your contributions.  It does not include:
1. a profit sharing plan;
2. thrift, savings or stock ownership plans;
3. a non-qualified deferred compensation plan; or
4. an individual retirement account (IRA), a tax sheltered annuity (TSA), Keogh Plan, 401(k) plan or 403(b) plan.

**Substance Abuse** means the pattern of pathological use of alcohol or other psychoactive drugs and substances characterized by:
1. impairments in social and/or occupational functioning;
2. debilitating physical condition;
3. inability to abstain from or reduce consumption of the substance; or
4. the need for daily substance use to maintain adequate functioning.

Substance includes alcohol and drugs but excludes tobacco and caffeine.

**We, us or our** means the Hartford Life and Accident Insurance Company.

**You, your, Insured Person** means the Insured Person to whom this Booklet-certificate is issued.

**Your Occupation**, if used in this Booklet-certificate, means your occupation as it is recognized in the general workplace.  Your Occupation does not mean the specific job you are performing for a specific employer or at a specific location.

### ERISA INFORMATION

### THE FOLLOWING NOTICE
### CONTAINS IMPORTANT INFORMATION

This employee welfare benefit plan (Plan) is subject to certain requirements of the Employee Retirement Income Security Act of 1974 (ERISA), as amended. ERISA requires that you receive a Statement of ERISA Rights, a description of Claim Procedures, and other specific information about the Plan. This document serves to meet ERISA requirements and provides important information about the Plan.

The benefits described in your booklet-certificate (Booklet) are provided under a group insurance policy (Policy) issued by the Hartford Life and Accident Insurance Company (Insurance Company) and are subject to the Policy's terms and conditions. The Policy is incorporated into, and forms a part of, the Plan. The Plan has designated and named the Insurance Company as the claims fiduciary for benefits provided under the Policy. The Plan has granted the Insurance Company full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy.

A copy of the Plan is available for your review during normal working hours in the office of the Plan Administrator.

---

1. **Plan Name**

   GROUP LONG TERM DISABILITY PLAN FOR EMPLOYEES OF ALLSTATE INSURANCE COMPANY.

---

2. **Plan Number**

   LTD - 511

---

3. **Employer/Plan Sponsor**

   ALLSTATE INSURANCE COMPANY
   2775 Sanders Road, E5
   Northbrook, IL 60062-6127

---

4. **Employer Identification Number**

   36-0719661

---

5. **Type of Plan**

   Welfare Benefit Plan providing Group Long Term Disability.

---

6. **Plan Administrator**
   Plan Administrator, Allstate Cafeteria Plan
   2775 Sanders Road, E5
   Northbrook, IL 60062-6127

---

7.  **Agent for Service of Legal Process**

For the Plan

Allstate Insurance Company
2775 Sanders Road, E5
Northbrook, IL 60062-6127

For the Policy:

Hartford Life And Accident Insurance Company
200 Hopmeadow St.
Simsbury, CT 06089

In addition to the above, Service of Legal Process may be made on a plan trustee or the plan administrator.

8.  **Sources of Contributions** -- The Employer pays the premium for the insurance, but may allocate part of the cost to the employee. The Employer determines the portion of the cost to be paid by the employee.

9.  **Type of Administration** -- The plan is administered by the Plan Administrator with benefits provided in accordance with the provisions of the applicable group plan.

10. The Plan and its records are kept on a Policy Year basis.

11. **Labor Organizations**

None

12. **Names and Addresses of Trustees**

None

13. **Plan Amendment Procedure**

The Plan Administrator reserves full authority, at its sole discretion, to terminate, suspend, withdraw, reduce, amend or modify the Plan, in whole or in part, at any time, without prior notice.

The Employer also reserves the right to adjust your share of the cost to continue coverage by the same procedures.

**STATEMENT OF ERISA RIGHTS**

As a participant in the Plan you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA), as amended. ERISA provides that all Plan participants shall be entitled to:

1.    **Receive Information About Your Plan and Benefits**

   a)    Examine, without charge, at the Plan Administrator's office and at other specified locations, such as worksites and union halls, all documents governing the Plan, including insurance contracts and collective bargaining agreements, and a copy of the latest annual report (Form 5500 Series) filed by the Plan with the U.S. Department of Labor and available at the Public Disclosure Room of the Employee Benefits Security Administration.

   b)    Obtain, upon written request to the Plan Administrator, copies of documents governing the operation of the Plan, including insurance contracts and collective bargaining agreements, and copies of the latest annual report (Form 5500 Series) and updated summary Plan description. The administrator may make a reasonable charge for the copies.

   c)    Receive a summary of the Plan's annual financial report. The Plan Administrator is required by law to furnish each participant with a copy of this summary annual report.

2.    **Prudent Actions by Plan Fiduciaries**

   In addition to creating rights for Plan participants ERISA imposes duties upon the people who are responsible for the operation of the employee benefit Plan. The people who operate your Plan, called "fiduciaries" of the Plan, have a duty to do so prudently and in the interest of you and other Plan participants and beneficiaries. No one, including your employer, your union, or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a welfare benefit or exercising your rights under ERISA.

3.    **Enforce Your Rights**

   If your claim for a welfare benefit is denied or ignored, in whole or in part, you have a right to know why this was done, to obtain copies of documents relating to the decision without charge, and to appeal any denial, all within certain time schedules. Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request a copy of Plan documents or the latest annual report from the Plan and do not receive them within 30 days, you may file suit in a Federal court. In such a case, the court may require the Plan Administrator to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the administrator. If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or Federal court. If the Plan requires you to complete administrative appeals prior to filing in court, your right to file suit in state or Federal court may be affected if you do not complete the required appeals. If it should happen that Plan fiduciaries misuse the Plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a Federal court. The court will decide who should pay court costs and legal fees. If you are successful the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, for example, if it finds your claim is frivolous.

4.    **Assistance with Your Questions**

   If you have any questions about your Plan, you should contact the Plan Administrator. If you have any questions about this statement or about your rights under ERISA, or if you need assistance in obtaining documents from the Plan Administrator, you should contact the nearest office of the Employee Benefits Security Administration (formerly known as the Pension and Welfare Benefits Administration), U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Employee Benefits Security Administration, U.S. Department of Labor, 200 Constitution Avenue N.W., Washington, D.C. 20210. You may also obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of the Employee Benefits Security Administration.

## CLAIM PROCEDURES

The Plan has designated and named the Insurance Company as the claims fiduciary for benefits provided under the Policy. The Plan has granted the Insurance Company full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy.

**Claim Procedures for Claims Requiring a Determination of Disability**

Claims for Benefits

If you or your authorized representative would like to file a claim for benefits for yourself or your insured dependents, you or your authorized representative should obtain a claim form(s) from your Employer or Plan Administrator. The applicable section of such form(s) must be completed by (1) you, (2) the Employer or Plan Administrator and (3) the attending physician or hospital. Following completion, the claim form(s) must be forwarded to the Insurance Company's claim representative. The Insurance Company will evaluate your claim and determine if benefits are payable.

The Insurance Company will make a decision no more than 45 days after receipt of your properly filed claim. The time for decision may be extended for two additional 30 day periods provided that, prior to any extension period, the Insurance Company notifies you in writing that an extension is necessary due to matters beyond the control of the Plan, identifies those matters and gives the date by which it expects to render its decision. If your claim is extended due to your failure to submit information necessary to decide your claim, the time for decision may be tolled from the date on which the notification of the extension is sent to you until the date we receive your response to our request. If the Insurance Company approves your claim, the decision will contain information sufficient to reasonably inform you of that decision.

Any adverse benefit determination will be in writing and include: 1) specific reasons for the decision, 2) specific references to the Policy provisions on which the decision is based, 3) a description of any additional material or information necessary for you to perfect the claim and an explanation of why such material or information is necessary, 4) a description of the review procedures and time limits applicable to such procedures, 5) a statement that you have the right to bring a civil action under section 502(a) of ERISA after you appeal our decision and after you receive a written denial on appeal, and 6) (A) if an internal rule, guideline, protocol, or other similar criterion was relied upon in making the denial, either (i) the specific rule, guideline, protocol or other similar criterion, or (ii) a statement that such rule, guideline, protocol or other similar criterion was relied upon in making the denial and that a copy will be provided free of charge to you upon request, or (B) if denial is based on medical judgment, either (i) an explanation of the scientific or clinical judgment for the determination, applying the terms of the Policy to your medical circumstances, or (ii) a statement that such explanation will be provided to you free of charge upon request.

Appealing Denials of Claims for Benefits

On any wholly or partially denied claim, you or your representative must appeal once to the Insurance Company for a full and fair review. You must complete this claim appeal process before you file an action in court. Your appeal request must be in writing and be received by the Insurance Company no later than the expiration of 180 days from the date you received your claim denial. As part of your appeal:

1. you may request, free of charge, copies of all documents, records, and other information relevant to your claim; and
2. you may submit written comments, documents, records and other information relating to your claim.

The Insurance Company's review on appeal shall take into account all comments, documents, records and other information submitted by you relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination.

The Insurance Company will make a final decision no more than 45 days after it receives your timely appeal. The time for final decision may be extended for one additional 45 day period provided that, prior to the extension, the Insurance Company notifies you in writing that an extension is necessary due to special circumstances, identifies those circumstances and gives the date by which it expects to render its decision. If your claim is extended due to your failure to submit information necessary to decide your claim on appeal, the time for decision shall be tolled from the date on which the notification of the extension is sent to you until the date we receive your response to the request.

The individual reviewing your appeal shall give no deference to the initial benefit decision and shall be an individual who is neither the individual who made the initial benefit decision, nor the subordinate of such individual. The review process provides for the identification of the medical or vocational experts whose advice was obtained in connection with an initial adverse decision, without regard to whether that advice was relied upon in making that decision. When deciding an appeal that is based in whole or part on medical judgment, we will consult with a medical professional having the appropriate training and experience in the field of medicine involved in the medical judgment and who is neither an individual consulted in connection with the initial benefit decision, nor a subordinate of such individual. If the Insurance Company grants your claim appeal, the decision will contain information sufficient to reasonably inform you of that decision.

However, any final adverse benefit determination on review will be in writing and include: 1) specific reasons for the decision, 2) specific references to the Policy provisions on which the decision is based, 3) a statement that you have the right to bring a civil action under section 502(a) of ERISA, 4) a statement that you may request, free of charge, copies of all documents, records, and other information relevant to your claim; 5) (A) if an internal rule, guideline, protocol, or other similar criterion was relied upon in making the decision on appeal, either (i) the specific rule, guideline, protocol or other similar criterion, or (ii) a statement that such a rule, guideline, protocol or other similar criterion was relied upon in making the decision on appeal and that a copy will be provided free of charge to you upon request, or (B) if the decision on appeal is based on medical judgment, either (i) an explanation of the scientific or clinical judgment for the decision on appeal, applying the terms of the Policy to your medical circumstances, or (ii) a statement that such explanation will be provided to you free of charge upon request, and 6) any other notice(s), statement(s) or information required by applicable law.

**Claim Procedures for Claims Not Requiring a Determination of Disability**

Claims for Benefits

If you or your authorized representative would like to file a claim for benefits for yourself or your insured dependents, you or your authorized representative should obtain a claim form(s) from your Employer or Plan Administrator. The applicable section of such form(s) must be completed by (1) you, (2) the Employer or Plan Administrator and (3) the attending physician or hospital. Following completion, the claim form(s) must be forwarded to the Insurance Company's claim representative. The Insurance Company will evaluate your claim and determine if benefits are payable.

The Insurance Company will make a decision no more than 90 days after receipt of your properly filed claim. However, if the Insurance Company determines that special circumstances require an extension, the time for its decision will be extended for an additional 90 days, provided that, prior to the beginning of the extension period, the Insurance Company notifies you in writing of the special circumstances and gives the date by which it expects to render its decision. If extended, a decision shall be made no more than 180 days after your claim was received. If the Insurance Company approves your claim, the decision will contain information sufficient to reasonably inform you of that decision.

However, any adverse benefit determination will be in writing and include: 1) specific reasons for the decision; 2) specific references to Policy provisions on which the decision is based; 3) a description of any additional material or information necessary for you to perfect the claim and an explanation of why such material or information is necessary; 4) a description of the review procedures and time limits applicable to such, and 5) a statement that you have the right to bring a civil action under section 502(a) of ERISA after you appeal our decision and after you receive a written denial on appeal.

Appealing Denials of Claims for Benefits

On any wholly or partially denied claim, you or your representative must appeal once to the Insurance Company for a full and fair review. You must complete this claim appeal process before you file an action in court. Your appeal request must be in writing and be received by the Insurance Company no later than the expiration of 60 days from the date you received your claim denial. As part of your appeal:

1.    you may request, free of charge, copies of all documents, records, and other information relevant to your claim; and

2.    you may submit written comments, documents, records and other information relating to your claim.

The Insurance Company's review on appeal shall take into account all comments, documents, records and other information submitted by you relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination.

The Insurance Company will make a final decision no more than 60 days after it receives your timely appeal. However, if the Insurance Company determines that special circumstances require an extension, the time for its decision will be extended for an additional 60 days, provided that, prior to the beginning of the extension period, the Insurance Company notifies you in writing of the special circumstances and gives the date by which it expects to render its decision. If extended, a decision shall be made no more than 120 days after your appeal was received. If the Insurance Company grants your claim appeal, the decision will contain information sufficient to reasonably inform you of that decision.

However, any final adverse benefit determination on review will be in writing and include: 1) specific reasons for the decision and specific references to the Policy provisions on which the decision is based, 2) a statement that you are entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records and other information relevant to the claim, 3) a statement of your right to bring a civil action under section 502(a) of ERISA, and 4) any other notice(s), statement(s) or information required by applicable law.



January 8, 2008

Carolyn Flynn
1531 Curtiss
Ames, IA  50010

Policy Holder:    U.S. Bank
Claimant:         Carolyn Flynn
Insured ID:       9000343732
Policy Number:    GLT675172

Dear Ms. Flynn:

This letter is about your claim for Long Term Disability (LTD) benefits.

According to the provisions of your Long Term Disability plan, you are eligible for a Cost-of-Living Adjustment (COLA) effective January 1, 2008.  Your COLA adjustment effective January 1, 2008 will be 1.1%.

Therefore, your monthly benefits will be re-calculated as follows:

| $6212.95 | Current LTD Benefit |
| + 68.34 | COLA |
| $6281.29 | LTD Benefit effective 1/1/08 |

If you have any questions, please feel free to contact our office at (800) 752-9713, x66493.  Our office hours are 8:00 AM to 8:00 PM CST, Monday through Friday.

Sincerely,


Jamie M. Radloff, Ability Analyst
Hartford Life and Accident Insurance Co.


Benefit Management Services
Minneapolis Disability Claim Office
3800 American Blvd. W, Ste 600
Bloomington, MN 55431
Fax (877) 454-7217

08CV3895
JUDGE KENNELLY
MAG. JUDGE VALDEZ
J. N.

# Social Security Administration
## Retirement, Survivors and Disability Insurance
Notice of Award

Office of Central Operations
1500 Woodlawn Drive
Baltimore, Maryland 21241-1500
Date: January 10, 2005
Claim Number: 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HA

0106 MCS,PC7J,BA,7120,058,153,018                 000017929 03 MB    0.718
MRUGNAYNA A CHAMPANERI
2182 LAKE SHORE CIR
ARLINGTON HTS, IL 60004-7201

You are entitled to monthly disability benefits beginning November 2004.

**The Date You Became Disabled**

We found that you became disabled under our rules on May 5, 2004.

However, you have to be disabled for 5 full calendar months in a row before you can be entitled to benefits. For these reasons, your first month of entitlement to benefits is November 2004.

**What We Will Pay And When**

- You will receive $1,264.00 around January 16, 2005.

- This is the money you are due for November 2004 and December 2004.

- Your next payment of $649.00, which is for January 2005, will be received on or about the third Wednesday of February 2005.

- After that you will receive $649.00 on or about the third Wednesday of each month.

- These and any future payments will go to the financial institution you selected. Please let us know if you change your mailing address, so we can send you letters directly.

The day we make payments on this record is based on your date of birth.

Enclosure(s):
Pub 05-10018
Pub 05-10153
Pub 05-10058

RECEIVED MPLS

AUG 0 1 2006

GROUP CLAIMS

C                          See Next Page

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HA

## Your Benefits

The following chart shows your benefit amount(s) before any deductions or rounding. The amount you actually receive(s) may differ from your full benefit amount. When we figure how much to pay you, we must deduct certain amounts, such as Medicare premiums. We must also round down to the nearest dollar.

| Beginning Date | Benefit Amount | Reason |
|---|---|---|
| November 2004 | $1,267.90 | Entitlement began |
| December 2004 | $1,302.10 | Cost-of-living adjustment |

## Other Disability Payments Affect Benefits

We have to consider workers' compensation and/or public disability payments when we figure a Social Security benefit. The following will explain how these payments affect Social Security benefits. For more information, please read the enclosed pamphlet, "How Workers' Compensation and Other Disability Payments May Affect Your Social Security Benefit."

The pamphlet explains how we reduce your Social Security disability checks if the money which you would receive from Social Security and workers' compensation payments adds up to more than 80 percent of your monthly average current earnings. We found that 80 percent of your average current earnings is $2,777.60.

We have to take into account your workers' compensation payment of $2,162.30 when we figure your Social Security benefits. Because you receive this payment, we are reducing the benefits you are due.

We are reducing your monthly Social Security checks beginning November 2004, which is the first month when you were entitled to both Social Security disability benefits and workers' compensation payments.

Your benefit will be $615.30 beginning November 2004.

Your benefits were increased beginning December 2004. This increase was not reduced because of workers' compensation payments.

If you had any medical, legal, or other related expenses connected with your claim for workers' compensation payments, you should bring us proof that you paid these expenses. We can exclude these expenses, within the limits set by law, when we figure how much to take out of your Social Security benefits.

## Other Social Security Benefits

The benefit described in this letter is the only one you can receive from Social Security. If you think that you might qualify for another kind of Social Security benefit in the future, you will have to file another application.

# Your New Benefit Amount

126408

**BENEFICIARY'S NAME:**

MRUGNAYNA A CHAMPANERI

Your Social Security benefits will increase by 4.1 percent in 2006, because of a rise in the cost of living. You can use this letter when you need proof of your benefit amount to receive food stamps, rent subsidies, energy assistance, bank loans, or for other business.

## How Much Will I Get And When?

- Your new monthly amount (before deductions) is                    $1,355.00
- The amount we are deducting for Medicare is                         $0.00
  (If you did not have Medicare as of Nov. 20, 2005,
  or if someone else pays your premium, we show $0.00.)
- The amount we are deducting for voluntary federal tax withholding is       $0.00
  (If you did not elect voluntary federal tax withholding as of
  Nov. 20, 2005, we show $0.00.)
- After taking any other deductions, we will deposit                 $1,355.00
  into your bank account on Jan. 18, 2006.
  If you disagree with any of these amounts, you should write to us within 60 days from the date you receive this letter.

## What If I Have Questions?

We invite you to visit our website at *www.socialsecurity.gov* on the Internet to find general information about Social Security. You also can call us at **1-800-772-1213** and speak to a representative from 7 a.m. until 7 p.m. on business days. If you have a touch-tone phone, recorded information and services are available 24 hours a day. Our lines are busiest early in the week and early in the month so, if your business can wait, it is best to call at other times. If you are deaf or hard of hearing, you may call our TTY number, **1-800-325-0778**. If you are outside the United States, you can contact any U.S. embassy or consulate office, or the Veterans Affairs Regional Office in Manila. Please have your full nine-digit Social Security claim number available when you call or visit and include it on any letter you send to the Social Security Administration. If you are inside the United States, you also can visit your local office.

215 SOUTH ELMHURST RD
PROSPECT HEIGHTS IL

BNC#: 05B1982G90654

Over ➤

126408*COLA*SM-DI*V064*L002

PRESORTED
FIRST-CLASS MAIL
POSTAGE AND FEES PAID
SOCIAL SECURITY
ADMINISTRATION
PERMIT NO. G-11

**SOCIAL SECURITY ADMINISTRATION**

OFFICE OF CENTRAL OPERATIONS

1500 WOODLAWN DRIVE

BALTIMORE MD 21241-1500

OFFICIAL BUSINESS
PENALTY FOR PRIVATE USE, $300

**Be sure to check out
our website: *www.socialsecurity.gov***

126408**********AUTO** 5-DIGIT 60004
MRUGNAYNA A CHAMPANERI
2182 LAKE SHORE CIR
ARLINGTON HTS IL 60004-7201